TOWN OF WAKEFIELD & others *vs.* NORTHEAST METROPOLITAN REGIONAL VOCATIONAL SCHOOL & others.

Middlesex. December 5, 1972. — February 8, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Regional School District. Contract,* Regional school district.

Where an agreement among the members of a regional school district determined the funds due from each member as of a certain date after enrollment in the school was "accomplished," enrollment was "accomplished" for purposes of the agreement when the school became a going concern, notwithstanding the fact that it was operating at less than full capacity on the agreed date. [59–60]

BILL IN EQUITY filed in the Superior Court on April 1, 1971.

The suit was heard by *Kalus,* J.

*Leo P. DeMarco,* City Solicitor, for the City of Malden.

*Mario L. Simeola,* Town Counsel, for the Town of Wakefield (*Thomas M. Leahy,* Town Counsel, for the Town of Stoneham, with him).

BRAUCHER, J. The Northeast Metropolitan Regional Vocational School District (the regional school) consists of five cities (Chelsea, Malden, Melrose, Revere and Woburn), and seven towns (North Reading, Reading, Saugus, Stoneham, Wakefield, Winchester and Winthrop). St. 1962, c. 703, as amended by St. 1963, c. 682. In 1963 the member communities executed an agreement with respect to the establishment of the regional school. Section IV (D) of that agreement provided for the apportionment of the capital and operating costs of the regional school among the member communities. A con-

troversy arose as to the proper method of apportionment of the costs for the calendar year 1971, and five towns brought this bill for declaratory relief against the regional school, its school committee, and the remaining member cities and towns. From the final decree the defendant city of Malden appeals. The judge made findings, rulings and an order for decree, and the evidence is reported.

We summarize the findings. The agreement [1] provided for apportionment on the basis of pupil enrollments in the regional school from the member communities, determined on October 1 of the year preceding the budget year. "In the event that enrollment in the regional district school has not been accomplished by October 1 of any such year," the agreement provided an alternative basis for apportionment, the enrollments in grades nine through twelve in the member communities. The defendant school committee adopted a budget of $2,946,847 for the calendar year 1971, and apportioned it on the alternative basis of pupil enrollments in the member communities. The regional school opened in September, 1970, and on October 1, 1970, its total enrollment was 846 students.

The judge ruled that the apportionment made by the defendant school committee violated the terms of the agreement and that the correct apportionment should have been based upon pupil enrollments in the regional school on October 1, 1970, and a decree was entered so declaring and directing the defendant school committee

---

[1] Section IV (D) reads as follows: "*Apportionment of Capital and Operating Costs* Capital and operating costs for the first calendar year next following the establishment of the regional school district and for every calendar year thereafter shall be apportioned to the member municipalities on the basis of their respective pupil enrollments in the regional district school. Each member municipality's share of capital and operating costs for each calendar year shall be determined by computing the ratio which that municipality's pupil enrollment in the regional district school on October 1 of the year next preceding the year for which the apportionment is determined bears to the total pupil enrollment from all the member municipalities in the regional district school on the same date. In the event that enrollment in the regional district school has not been accomplished by October 1 of any such year, capital and operating costs shall be apportioned on the basis of enrollment in grades nine through twelve of pupils residing in each member municipality and receiving education at such municipality's expense on October 1 of such year."

to reapportion the costs in accordance with the correct formula. There was no error.

In effect the judge ruled that "enrollment in the regional district school" had been "accomplished" by October 1, 1970. It is argued that the school was built to accommodate 1,200 students, that applications for admission were on file for some 1,500 students, that the school facilities to handle these applicants were not available, and that it was therefore a proper exercise of the judgment and discretion of the defendant school committee to determine that "enrollment" had not been "accomplished" until the school was reasonably near full capacity. We disagree.

We pass the point that there is no evidence that the defendant school committee voted to exercise any such discretion. Apparently the chairman ruled as matter of law that "enrollment" had not been "accomplished," and the committee voted to sustain his ruling. There is nothing in the agreement to suggest that the committee was to have any discretion in deciding how to apportion costs among the member communities, and the organization of the committee, with each city or town having one vote, regardless of population, was not such as to make such discretion appropriate. The plain meaning of the agreement in the light of its context and purpose is that enrollment in the regional district school has been "accomplished" if the school is a going concern on October 1. As the judge pointed out, enrollments in the member communities merely indicated potential enrollment in the regional school, and should yield to actual enrollment when actual enrollment is available.

The plain meaning of the contract is reinforced by considerations of fairness. The choice of formula affects the taxes to be levied by the member communities, and a choice of formula which requires the taxpayers of one town to pay for the education of children from another town does not commend itself.

*Decree affirmed.*